**ANTHONY BIDDLE CONTRACTORS, INC., Appellant**

v.

**PREET ALLIED AMERICAN STREET, LP, and Abington Savings Bank T/A Abington Bank and American Street Lofts, LLC, Appellees.**

Anthony Biddle Contractors, Inc., Appellant

v.

Preet Allied American Street, LP, and Abington Savings Bank T/A Abington Bank and American Street Lofts, LLC, Appellees.

Superior Court of Pennsylvania.

Argued May 11, 2011.

Filed Aug. 3, 2011.

Dianne A. Dichter, Philadelphia, for appellant.

David E. Stern, Jenkintown, for appellees.

BEFORE: DONOHUE, MUNDY, and STRASSBURGER *, JJ.

OPINION BY MUNDY, J.:

Appellant, Anthony Biddle Contractors, Inc., (hereinafter "Biddle"), appeals from the summary judgment entered on October 26, 2010, in favor of Abington Savings Bank (hereinafter "Abington") and American Street Lofts, LLC (hereinafter "ASL"). After careful review, we reverse the trial court's grant of summary judgment and remand for proceedings consistent with this opinion.

The pertinent factual and procedural background of this case as gleaned from the certified record follows. Biddle is a construction company specializing in the areas of excavation and concrete services. Pursuant to a written subcontract, in exchange for $295,000.00, Biddle agreed to provide services for a condominium construction project located at 717–729 North American Street & 212–220 Brown Street in Philadelphia, Pennsylvania (hereinafter "condominium property"). Preet Allied American Street, LP (hereinafter "Preet"), the owner and developer of the condominium property, financed this construction project through a loan from Abington. As security for the loan, Abington received a mortgage lien against the entire condominium property.

Subsequently, because Biddle was not paid the full amount agreed upon under the terms of the subcontract, Biddle sued Preet for breach of contract.[1] In April of 2008, the parties reached a settlement agreement in which Biddle agreed "to withdraw and dismiss with prejudice any and all claims asserted against [Preet] in the Litigation, and to forever waive, forgo and forbear from asserting any such claims or grounds in the future. . . ."[2] C.R.

---

* Retired Senior Judge assigned to the Superior Court.

1. Specifically, Biddle initiated the action against Creative Construction Managers, LLC (hereinafter "CCM"), Preet Allied American Street LP, and Preet Allied American Street, LLC. The settlement agreement, to which all the parties in the action agreed, collectively refers to the three named defendants as "CCM Parties." Certified Record (C.R.) at 8; Biddle's Joinder Complaint, Exhibit 1, (Settlement Agreement).

2. According to the settlement agreement, Biddle agreed to withdraw and dismiss with prejudice any and all claims against all CCM

at 8; Biddle's Joinder Complaint, Exhibit 1 (Settlement Agreement at ¶¶ 4–5). In exchange for these assurances, Preet agreed (1) to convey one of the units located at the condominium property to Biddle, and (2) to provide Biddle with a $100,000.00 credit towards the purchase price of the unit.[3] *Id.,* Exhibit 1 (Settlement Agreement at ¶¶ 1–3). Pursuant to the terms of the settlement agreement, Biddle and Preet then entered into an agreement of sale on April 9, 2008. The agreement of sale obligated Preet to convey to Biddle Unit No. 5C located on the condominium property for $345,000.00, less the $100,000.00 credit.[4] C.R. at 1; Biddle's Complaint, Exhibit A (Agreement of Sale at ¶ 2). The agreement of sale specified that "[Preet] shall convey or cause to be conveyed to [Biddle] title to the Unit by special warranty deed ("Deed"). Title to the Unit shall be free and clear of liens, claims and encumbrances and shall be good and marketable and insurable at ordinary rates by any reputable title insurance company...." *Id.* at ¶ 4(a). Prior to executing both the settlement agreement and the agreement of sale, Biddle informed Preet that it "needed assurance that Abington consented to the settlement and sale of the Unit free of liens." C.R. at 8; Biddle's Joinder Complaint at ¶ 16. According to Biddle, on April 7, 2008, Abington communicated to Preet its approval and consent to the terms of both the settlement agreement and the agreement of sale, including the provisions in which Preet agreed to convey Unit No. 5C to Biddle free of all liens. *Id.* at ¶¶ 19–20.

The terms of the agreement of sale set October 31, 2008 as the "Closing Date" when Preet would convey title of Unit No. 5C to Biddle in exchange for the balance of the purchase price, less the $100,000.00 credit. C.R. at 1; Biddle's Complaint, Exhibit A (Agreement of Sale at ¶ 5(a)-(b)). Although "Biddle was ready, willing and able to tender the sale price and complete the transaction[,]" Preet failed to appear at settlement on the specified date. C.R. at 8; Biddle's Joinder Complaint at ¶¶ 24–26. Furthermore, Preet defaulted on the loan, which it had secured from Abington in order to provide financing for the construction project. As a result of Preet's loan default, Abington obtained a judgment by confession against Preet on February 27, 2009. Thereafter, on March 3,

Parties. C.R. at 8; Biddle's Joinder Complaint, Exhibit 1 (Settlement Agreement at ¶¶ 4–5). In addition, CCM Parties made a reciprocal agreement to withdraw and dismiss with prejudice any and all claims against Biddle. *Id.*

3. As security for the promises to convey the unit and to provide a $100,000.00 purchase credit, Preet also agreed to give Biddle a promissory note in the amount of $100,000.00. C.R. at 8; Biddle's Joinder Complaint, Exhibit 1 (Settlement Agreement at ¶ 2–3).

4. Specifically, the agreement of sale describes the unit conveyed as follows.

Declarant agrees to convey to Purchaser, and Purchaser agrees to purchase from Declarant, pursuant to the terms and conditions of this Agreement, Unit No. 5C in the Condominium known as the American Loft Building and the right to the use of the single parking space described at Unit 5C, together with (i) an undivided percentage interest in the common elements (the "Common Elements") of the property and improvements attributed to the Unit (the "Percentage Interest") of the Condominium and any right to limited common elements (the "Limited Common Elements") which may be attributed to that Unit, as further detailed in the Public Offering Statement, Unit No. 5C, parking space Unit [to be announced], the Percentage Interest and any applicable interests in Limited Common Elements are hereinafter called the "Unit".

C.R. at 1; Biddle's Complaint, Exhibit A (Agreement of Sale at ¶ 1).

2009, Biddle filed a complaint against Preet, seeking specific performance to compel Preet to convey Unit No. 5C in accordance with the agreement of sale.[5] Two days after Biddle filed its complaint against Preet, however, Abington filed a praecipe for a writ of execution against the condominium property on March 5, 2009. Before a sheriff's sale was scheduled, Abington assigned to ASL the loan documentation, judgment, and mortgage related to the condominium property. C.R. at 19; ASL's Answer and New Matter at ¶ 30. At the sheriff's sale held on June 2, 2009, ASL purchased the entire condominium property, including Unit No. 5C. C.R. at 8; Biddle's Joinder Complaint at ¶ 30.

Thereafter, on November 24, 2009, Biddle joined both Abington and ASL as additional defendants in the action underlying this appeal.[6] In its joinder complaint, Biddle alleged causes of action for specific performance, promissory estoppel, constructive trust, and intentional interference with a contractual relationship.[7] Biddle's Joinder Complaint at ¶¶ 32–54. Before Abington and ASL were joined as defendants, the trial court issued a case management order on June 17, 2009, which set forth the discovery schedule for the pending case. The case management order announced that all discovery must be completed by April 5, 2010. Abington and ASL initially filed preliminary objections to Biddle's joinder complaint, which the trial court denied in an order entered on February 12, 2010. As such, they did not file their answer and new matter until March 1, 2010, approximately one month before the discovery deadline expired. C.R. at 18. "On March 4, 2010, after reviewing the admission and denials in [Abington and ASL's] Answer and New Matter, Biddle prepared and served interrogatories and Requests for Production of Documents addressed to Abington and ASL." Biddle's Motion for Reconsideration at ¶ 30 and Exhibit E; C.R. at 26.

Biddle filed a motion for extraordinary relief on April 13, 2010, seeking to extend the discovery deadline by ninety days.[8] C.R. at 22. According to the motion, due to the late filing of their answer, Abington and ASL had not provided full and complete responses to Biddle's discovery requests before the discovery deadline expired. *Id.* Specifically, Biddle sought an extension of the discovery deadline for the following reasons.

> [B]oth [Abington and ASL] have outstanding interrogatories and document requests. [Biddle] also needs to serve a

---

**5.** Also on March 3, 2009, Biddle filed a praecipe for *lis pendens* against Unit No. 5C of the condominium property.

**6.** As Biddle's joinder complaint avers, it did not obtain a judgment against Preet for specific performance prior to the date of the sheriff's sale on June 2, 2009. Importantly, Biddle had been unable to serve Preet with notice of the complaint at its last known address because Preet had apparently moved the location of its business. On September 8, 2009, the trial court granted Biddle's motion for alternate service of the complaint. C.R. at 5. The court's order directed Biddle to serve Preet with notice using regular mail. *Id.* Thereafter, Biddle filed a praecipe to reinstate the complaint and an affidavit of service stating that service was completed on September 24, 2009. C.R. at 6–7.

**7.** In addition, Biddle avers that "[u]pon information and belief, ASL is owned, managed and/or controlled by Abington." C.R. at 8; Biddle's Joinder Complaint at ¶ 8.

**8.** Biddle averred that its counsel "inadvertently marked April 15, 2010 as the discovery deadline[,]" rather than the correct date of April 5, 2010. C.R. at 26; Biddle's Motion for Reconsideration, ¶ 34. Consequently, Biddle explained that its "only [discovery] violation [was] an inadvertent delay in the filing of the motion for extraordinary relief" on April 13, 2010. *Id.* at ¶ 40.

third party subpoena. Based on the discovery answers received, a determination can then be made if any depositions are needed.

*Id.* In an order entered on May 6, 2010, the trial court denied Biddle's motion. C.R. at 24. Biddle then filed a motion for reconsideration, which the trial court ultimately denied in an order entered on July 14, 2010. C.R. at 26, 29.

Abington and ASL filed a motion for summary judgment, which the trial court granted in an order entered on September 22, 2010. C.R. at 25, 30. Then, on October 26, 2010, judgment was entered in favor of Abington and ASL on all claims pursuant to the trial court's earlier order granting summary judgment. C.R. at 32. Thereafter, Biddle filed this timely notice of appeal.[9]

On appeal, Biddle raises the following three issues for our review.

1. Did the trial court err in denying appellant [Biddle] an extension of time to complete discovery?
2. Did appellant [Biddle] produce evidence of facts which were essential to its claims and which in a jury trial would require submission of the issue to a jury?
3. Should summary judgment have been entered against appellant [Biddle] when material facts were in dispute?

Biddle's Brief at 5. The three issues posed by Biddle raise highly interrelated questions of law. Biddle's motion for ex-traordinary relief sought to extend the discovery deadline. We recognize that our decision as to whether the trial court abused its discretion in denying Biddle's motion for extraordinary relief will directly impact our review of the trial court's order granting summary judgment in favor of Abington and ASL. If Biddle was entitled to additional discovery from Abington and ASL, then the trial court erred in granting summary judgment before such additional discovery was completed. Accordingly, to the extent that Biddle's first issue challenges the propriety of the trial court's order granting summary judgment, we shall address the two issues concomitantly.

In the first issue presented on appeal, Biddle argues that the trial court abused its discretion by denying its motion for extraordinary relief. Biddle's Brief at 16. Biddle contends that "[b]y refusing to extend discovery, the [trial] court, in effect, levied a harsh and unwarranted sanction against [it]." *Id.* at 14. Because Abington and ASL failed to comply with their discovery obligations before the April 5, 2010 deadline elapsed, Biddle avers that it suffered prejudice as a result of its inability to uncover evidence of the facts necessary to support its claims. *Id.* Conversely, Biddle maintains that Abington and ASL would not have experienced prejudice if the trial court had extended the discovery deadline as requested. *Id.* at 15.

Specifically, Biddle alleges that the information requested from Abington and

---

**9.** The certified record reveals that Biddle filed two notices of appeal. First, Biddle filed a notice of appeal on October 22, 2010, appealing the trial court's September 22, 2010 order. C.R. at 31. Second, Biddle filed a notice of appeal on November 22, 2010, appealing the entry of judgment on October 26, 2010. C.R. at 35. Although the trial court's September 22, 2010 order grants Abington and ASL's motion for summary judgment, it also allots 30 days for Biddle to produce additional evidence demonstrating Abington's promise or agreement to allow Preet to convey Unit No. 5C free of all liens and encumbrances. C.R. at 30. Consequently, the trial court's September 22, 2010 order was not a final order. Thus, Biddle's second notice of appeal is proper, as it identifies the date on which judgment was entered and became final.

ASL during discovery was pertinent to the trial court's decision to grant summary judgment, but as noted previously, "Abington and ASL refused to supply the information, and the trial court shut down Biddle's request for more time to obtain the information." *Id.* at 15–16. For example, during discovery, Biddle requested information regarding (1) "who at Abington was privy to or had knowledge of [ ] negotiations" with Preet concerning the terms of Preet's settlement agreement with Biddle, and (2) "the formation of ASL and the true purchaser of the Condominium." *Id.* at 16. Biddle's argument suggests that the prejudice, which it experienced, ultimately became manifest in the trial court's September 22, 2010 order granting summary judgment in favor of Abington and ASL. *Id.* at 15–16. Consequently, Biddle insists that this case should be remanded to enable the completion of discovery before the trial court entertains Abington and ASL's motion for summary judgment. *Id.* at 16.

The trial court, in the case *sub judice,* concluded that Biddle failed to produce evidence of facts essential to each of the causes of action alleged against Abington and ASL in the joinder complaint. Trial Court Opinion, 10/28/10, at 1–5; C.R. at 33. Specifically, the trial court found "Biddle did not show that Abington made any promise to allow [Unit No. 5C] to be sold to Biddle free and clear of Abington's mortgage lien." *Id.* at 3. The trial court determined that the lack of evidence in regard to Abington's alleged promise was critically detrimental to all of Biddle's claims because "[this] promise serve[d] as the basis for Biddle's entire case against Abington." *Id.* Thus, based upon its determination that Biddle offered insufficient evidence to demonstrate the existence of a genuine issue of material fact, the trial court granted Abington and ASL's motion for summary judgment. *Id.* at 5.

The record, however, does not reflect the trial court's reason for denying Biddle's motion for extraordinary relief. In refusing to extend the discovery deadline, the trial court did not offer any explanation for its decision. We note that Biddle filed its motion on April 13, 2010, which was eight days after the deadline for discovery expired according to the June 17, 2009 case management order. Nevertheless, from our review of the record, we discern no reason to conclude the trial court denied Biddle's motion because it found that opposing parties were prejudiced by Biddle's filing delay. Thus, despite the absence of any discernible finding of prejudice, it appears that the mere failure of Biddle to strictly comply with the case management order factored into the trial court's decision to deny Biddle's request to extend the discovery deadline.

As we begin our review of the trial court's order denying Biddle's motion for extraordinary relief, we note, "[g]enerally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *Lockley v. CSX Transp. Inc.,* 5 A.3d 383, 388 (Pa.Super.2010), *quoting Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1125 (Pa.Super.2007). Herein, the issue presented to this Court concerns the case management system established by the local rules of Philadelphia County. "Local courts have the power to formulate their own rules of practice and procedure." *Sanders v. Allegheny Hospital–Parkview Div.,* 833 A.2d 179, 183 (Pa.Super.2003), *citing Murphy v. Armstrong,* 424 Pa.Super. 424, 622 A.2d 992 (1993). "These rules have equal weight to those rules established by the Pennsylvania Supreme Court provided that the local rules 'do not abridge, enlarge or modify' the substantive rights of a party." *Id.,quoting Pennridge Electric, Inc. v. Souderton Area Joint*

*School,* 419 Pa.Super. 201, 615 A.2d 95, 102 (1992); *see* Pa.R.C.P. 239(b)(1) (providing that "[l]ocal rules shall not be inconsistent with any general rule of the Supreme Court or any Act of Assembly"). Philadelphia's case management system is designed to "implement[ ] and enforce[ ] discovery deadlines as an essential means for controlling [the trial courts'] overcrowded dockets." *Gerrow v. John Royle & Sons,* 572 Pa. 134, 813 A.2d 778, 783 (2002) (Saylor, J., concurring). The case management order, issued pursuant to the local rules of Philadelphia County, sets forth all the applicable discovery deadlines for a given case. The only mechanism to extend such deadlines is through filing a petition for extraordinary relief. *See* Philadelphia Court of Common Pleas Gen. Court Reg. No. 95–2; *see also* Phila. Civ.R. 208.3(b)(H).

We recognize that multiple delays "would disrupt the efficient and just administration of justice and would send a blatant message that case management deadlines are meaningless." *Kurian ex rel. Kurian v. Anisman,* 851 A.2d 152, 162 (Pa.Super.2004) (internal quotations omitted). "When [case management] deadlines are violated with impunity ... the abusing party must be prepared to pay the consequences." *Id.* Even an order effectively dismissing a lawsuit "is in accordance with Pennsylvania's Rules of Civil Procedure"

when a party suffers sufficient prejudice stemming from an unjustified delay. *Id.*

Nevertheless, while "these deadlines are far from meaningless [as t]hey are *court orders* [,]" we observe "our Supreme Court has made clear the fact that local rules, such as Philadelphia's case management system, must take a backseat to our Rules of Civil Procedure" in appropriate circumstances. *Id.* (emphasis in original). *Gerrow, supra* at 783–784, an opinion announcing the judgment of our Supreme Court makes clear that the Philadelphia trial courts should not rigidly enforce case management deadlines without adequately considering the basis of a party's motion for extraordinary relief, specifically the reasons cited in support of extending discovery. This opinion suggests that, in situations where the circumstances support extending the discovery deadlines, a denial of a party's motion for extraordinary relief may constitute "an unreasonable decision" on the part of the trial court and a "manifest injustice." [10] *Id.* at 783. In addition, according to the concurring opinion authored by Justice Saylor, "rigid adherence" to the case management procedure established by Philadelphia's local rules may come into "tension with the present, applicable rules of civil procedure and prevailing decisional law" given the correct set of conditions. *Id.* at 784 (Saylor, J.,

---

**10.** In *Gerrow, supra,* our Supreme Court confronted an appeal in which the trial court granted Appellees' motion for summary judgment after denying Appellants' request to extend the discovery deadline set forth by a case management order. *Id.* at 780–781. The plurality opinion primarily focused upon the application of the coordinate jurisdiction rule. *Id.* at 783. Specifically, the issue before our Supreme Court was whether the trial judge considering a motion for summary judgment was bound by a prior judge's denial of a motion to extend pertinent discovery deadlines. *Id.* at 782–783. In determining that the coordinate jurisdiction rule was not appli-

cable, our Supreme Court opined that the judge who had denied the motion to extend discovery appeared to render an unreasonable and unjust decision. *Id.* at 783. As such, our Supreme Court noted that "[i]t would have been perfectly proper for [the trial judge considering the motion for summary judgment] to reexamine the discovery timetable in order to correct that error." *Id.* Our Supreme Court reached this conclusion after considering the facts set forth in support of the motion to extend the discovery deadline, which evinced a genuine need for an extension. *Id.*

concurring). Justice Saylor explained that this tension occurs when (1) the strict enforcement of the case management system constitutes a severe discovery sanction and (2) the trial court imposed this form of sanction without considering the pertinent legal standards in exercising its discretion.[11] *Id.* Justice Saylor also emphasized that, if strictly enforcing case management deadlines equates to a severe discovery sanction, the trial court is required "to make an assessment for prejudice" when exercising its discretion. *Id.*

■ Herein, we have examined the certified record before us, including the parties' briefs and the reasoning offered by the trial court in support of its decision. In addition, we have surveyed the Pennsylvania Rules of Civil Procedure and the local rules of Philadelphia County, as well as the applicable decisional law. Accordingly, after careful review, we conclude that the trial court abused its discretion by denying Biddle's motion for extraordinary relief. *See Lockley, supra* at 388.

■ First, the denial of Biddle's motion constitutes an abuse of the trial court's discretion because Biddle substantially complied with the June 17, 2009 case management order, specifically the April 5, 2009 deadline contained therein. While litigants should adhere to procedural rules as written, our Supreme Court has "always understood that procedural rules are not ends in themselves, and that the rigid application of [the] rules does not always serve the interests of fairness and justice." *Womer v. Hilliker,* 589 Pa. 256, 908 A.2d 269, 276 (2006), *citing Pomerantz v. Goldstein,* 479 Pa. 175, 387 A.2d 1280, 1281 (1978). Incorporated within Pa.R.C.P. 126, the doctrine of substantial compliance "giv[es] the trial courts the latitude to overlook any '*procedural* defect' that does not prejudice a party's rights."[12] *Id.* at 276, *quoting Sahutsky v. H.H. Knoebel Sons,* 566 Pa. 593, 782 A.2d 996, 1001

11. The preclusion of evidence is the severe discovery sanction, which Justice Saylor refers to in his concurrence. *Gerrow, supra* at 783–784. In addition, Justice Saylor notes that this form of preclusionary order respecting discovery "is permissible only 'on motion'" pursuant to Pa.R.C.P. 4019(a)(1). *Id.* at 784. In the case *sub judice,* we recognize that the record does not reflect that either party filed a motion requesting that the trial court impose sanctions under Pa.R.C.P. 4019(a)(1). By denying Biddle's motion for extraordinary relief, however, the trial court's order precluded any evidence that Biddle could have obtained from Abington and ASL during discovery. Additionally, from our review of the record, and in the absence of any explanation or finding of prejudice by the trial court, we infer that the primary basis for the trial court's denial was Biddle's violation of the deadline contained within the June 17, 2009 case management order.

12. In order to address equitable considerations, our Supreme Court adopted Pa.R.C.P. 126 and incorporated the doctrine of substantial compliance therein. *Womer, supra* at 276. Specifically, Pennsylvania Rule of Civil Procedure 126, **Liberal Construction and Application of Rules,** provides as follows.

> The rules [of civil procedure] shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties. Pa.R.C.P. 126. Thus, our Supreme Court explained as follows.
>
> [W]hile we look for full compliance with the terms of our rules, we provide a limited exception under Rule 126 to those who commit a misstep when attempting to do what any particular rule requires. **Moreover, we made Rule 126 a rule of universal application, such that the trial court may disregard any such procedural defect or error at every stage of any action or proceeding to which the civil procedural rules apply.**
>
> *Womer, supra* at 276 (citations omitted) (emphasis added).

(2001) (citation omitted) (emphasis in original). We note that the provisions contained within local rules of procedure must also be applied and interpreted in a manner that is consistent with the fairness mandated by Pa.R.C.P. 126. *See Byard F. Brogan, Inc. v. Holmes Elec. Protective Co. of Philadelphia,* 501 Pa. 234, 460 A.2d 1093, 1097 (1983).

Biddle's untimely filing of its motion for extraordinary relief is precisely the type of procedural defect that Pa.R.C.P. 126 contemplates. *See Sahutsky, supra* at 1001. In the case *sub judice,* Biddle attempted to comply with the April 5, 2010 deadline contained within the case management order. Unfortunately, Biddle committed a clerical oversight that prevented it from strictly adhering to the order as written. Counsel for Biddle mistakenly recorded the date of April 15, 2010 as the discovery deadline prescribed by the case management order, which resulted in Biddle filing its motion on April 13, 2010. *See* C.R. at 26; Biddle's Motion for Reconsideration, ¶¶ 34, 40 (averring "[c]ounsel for Biddle had inadvertently marked April 15, 2010 as the discovery deadline" and "the only [discovery] violation is an inadvertent delay in the filing of the motion for extraordinary relief"). Because Biddle filed its motion for extraordinary relief only eight days late, the effect on Abington and ASL was the same as if Biddle had strictly complied with the April 5, 2010 deadline. Impor-

tantly, from our review of the record, we observe that neither Abington nor ASL has ever alleged prejudice as a result of Biddle's filing delay.[13] Thus, due to Biddle's substantial compliance with the case management order, we determine that strictly enforcing the April 5, 2010 deadline against Biddle serves neither the interest of fairness nor the interest of justice. *See Womer, supra* at 276. As such, the trial court abused its discretion to the extent that it denied Biddle's motion as untimely.

Second, we regard it appropriate to view the trial court's denial of Biddle's motion for extraordinary relief as the imposition of a discovery sanction against Biddle. When viewed accordingly, the denial of Biddle's motion for extraordinary relief is unjustifiable in light of the minor nature of Biddle's violation. Although the trial court's reason for denying Biddle's motion is missing from the record, as noted previously in the absence of any explanation or finding of prejudice, we infer that Biddle's violation of the April 5, 2010 discovery deadline factored strongly in the trial court's decision. Ordinarily, denying a party's request to extend the discovery deadline would not be considered a sanction; however, the severe consequences of the trial court's denial transform it into the functional equivalent of the harshest form of discovery sanction available, termination of the underlying action.[14] The denial of

---

**13.** Although the record does not indicate that they responded to Biddle's motion for extraordinary relief, Abington and ASL filed a response to Biddle's motion for reconsideration. C.R. at 28. Therein, Abington and ASL alleged that Biddle "had sufficient time under the Case Management Order to proceed with discovery" and that Biddle "ha[d] no excuse for disregarding the Case Management Order." *Id.,* ¶¶ 38–47. Their response, however, fails to develop these bald assertions. *Id.* Moreover, their response does **not** contain any indication that either Abington or ASL

experienced prejudice as a result of Biddle's minor filing delay. *Id.*

**14.** According to the certified record, no party motioned the trial court to impose sanctions for a discovery violation. *See* Pa.R.C.P. 4019(a)(1)(viii) (providing that "the [trial] court may, on motion, make an appropriate order if [ . . . ] a party or person otherwise fails to make discovery or to obey an order of court respecting discovery"). Nevertheless, as noted above, the trial court's denial of Biddle's motion for extraordinary relief con-

Biddle's motion, therefore, constitutes an abuse of the trial court's discretion.

By denying Biddle's motion for extraordinary relief, the trial court foreclosed any opportunity for Biddle to obtain the discovery necessary in order to sustain its claims against Abington and ASL. Although the trial court's September 22, 2010 order provided Biddle with 30 days to produce additional evidence in support of its allegations before summary judgment was entered, the trial court's refusal to extend the discovery deadline established by the June 17, 2009 case management order stripped Biddle of the means to acquire such evidence. Therefore, in effect, the trial court imposed a discovery sanction upon Biddle, which essentially terminated its action against Abington and ASL. *See Cove Centre, Inc. v. Westhafer Const., Inc.*, 965 A.2d 259, 261 (Pa.Super.2009) (declaring that when a discovery sanction results in the ultimate termination of the underlying litigation, "appellate review is stringent"); *Steinfurth v. LaManna*, 404 Pa.Super. 384, 590 A.2d 1286, 1288–1289 (1991) (holding "we strictly scrutinize the appropriateness of [a] sanction [which is tantamount to dismissal of the action] as it produces the harshest result possible and should be imposed only in extreme circumstances").

■■■ "Generally, imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court, as is the severity of the sanctions imposed." *Rohm & Haas Co. v. Lin*, 992 A.2d 132, 142 (Pa.Super.2010) (citations omitted). The trial court's discretion, however, is not unfettered. *Id.* "[W]hen a discovery sanction is imposed, the sanction must be appropriate when compared to the violation of the discovery rules." *Reilly v. Ernst & Young, LLP*,

929 A.2d 1193, 1200 (Pa.Super.2007), *quoting Steinfurth, supra* at 1288. Because "dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced." *Cove Centre, supra* at 261, *quoting Stewart v. Rossi*, 452 Pa.Super. 120, 681 A.2d 214, 217 (1996), *appeal denied*, 547 Pa. 731, 689 A.2d 235 (1997). "Consequently, where a discovery sanction either terminates the action directly or would result in its termination by operation of law, the court must consider multiple factors balanced against the necessity of the sanction." *Rohm & Haas, supra* at 142 (citations omitted).

Mindful, of course, that each factor represents a necessary consideration and not a necessary prerequisite, this Court has outlined the following factors: (1) the nature and severity of the discovery violation; (2) the defaulting party's willfulness or bad faith; (3) prejudice to the opposing party; (4) the ability to cure the prejudice; and (5) the importance of the precluded evidence in light of the failure to comply. *Cove Centre, supra* at 262, *quoting Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa.Super.1997) (citations omitted), *appeal denied*, 553 Pa. 689, 717 A.2d 1028 (1998); *see also Rohm & Haas, supra* at 142.

Because the denial of Biddle's motion for extraordinary relief was the functional equivalent of a sanction that ultimately resulted in the termination of the underlying action, the trial court was required to consider the five factors set forth in *Croydon Plastics, supra* at 629, and to balance

stitutes the functional equivalent of a sanc- tion.

those factors against the necessity of the sanction. *See Rohm & Haas, supra* at 142. Based upon these enumerated factors, we conclude that the trial court's denial of Biddle's motion for extraordinary relief was **not** an appropriate measure when compared to Biddle's minor violation of the June 17, 2009 case management order. *See Reilly, supra* at 1200. The facts set forth in the case *sub judice* do not reveal an extreme set of circumstances, which would justify imposing a discovery sanction upon Biddle that effectively dismisses its action against Abington and ASL. *See Cove Centre, supra* at 261; *Stewart, supra* at 217.

In analyzing the factors articulated in *Croydon Plastics, supra* at 629, we emphasize that the trial court's refusal to extend the discovery deadline adversely impacted the viability of Biddle's claims against Abington and ASL. As detailed above, by denying Biddle's motion for extraordinary relief, the trial court ensured Biddle's action against Abington and ASL would not survive summary judgment. Biddle lost the opportunity to obtain evidence of facts needed to support the allegations contained within its joinder complaint, when Abington and ASL failed to respond to Biddle's discovery requests **before** the April 5, 2010 deadline expired. Thus, because the trial court declined to extend the deadline, Biddle was prevented from completing all necessary discovery.

Additionally, we observe that Biddle's violation of the discovery deadline decreed by the case management order was neither severe nor egregious. *See Rohm & Haas, supra* at 142; *Croydon Plastics, supra* at 629. As noted above, Biddle filed its motion for extraordinary relief on April 13, 2010 because "[c]ounsel for Biddle had inadvertently marked April 15, 2010 as the discovery deadline" prescribed by the case management order. C.R. at 26; Biddle's Motion for Reconsideration, ¶¶ 34, 40. Fortunately, this harmless clerical oversight only delayed Biddle from filing its motion by eight days. Thus, our review of the record has failed to uncover any evidence that Biddle acted willfully or in bad faith by filing its motion for extraordinary relief after the April 5, 2010 deadline had expired. *See Cove Centre, supra* at 261; *Stewart, supra* at 217.

Although we realize that repeatedly violating case management deadlines with impunity may justify the imposition of severe sanctions, the record herein evinces that this minor violation was an aberration on the part of Biddle. *See Kurian, supra* at 162. Far from demonstrating Biddle's disregard for the discovery process and the pertinent deadlines set forth by the case management order, the record reflects that Biddle conducted discovery in an appropriate fashion. Biddle served its written discovery requests upon Abington and ASL within the period allotted by the case management order, and in accordance with a reasonable discovery strategy. Conversely, we deem it noteworthy that Biddle's discovery compliance stands in stark contrast to Abington and ASL's failure to respond to Biddle's discovery requests before the case management deadline elapsed.

We further determine that Abington and ASL did **not** experience any form of prejudice as a result of Biddle's minor procedural violation. *See Cove Centre, supra* at 261; *Stewart, supra* at 217. As we concluded above, any possible prejudice to Abington and ASL was abated when Biddle filed its motion for extraordinary relief **only** eight days beyond the April 5, 2010 discovery deadline, thus substantially complying with the discovery timetable outlined in the June 17, 2009 case management order. Importantly, our thorough review of the record has not revealed any

evidence indicating Abington and ASL were adversely affected by the eight days that elapsed between the discovery deadline and the date on which Biddle filed its motion for extraordinary relief. We deem it significant that neither Abington nor ASL filed a response in opposition to Biddle's motion for extraordinary relief. Although they responded to Biddle's motion for reconsideration, the record reveals that neither Abington nor ASL ever claimed to have suffered prejudice due to Biddle's eight-day filing delay. *See* C.R. at 28. As such, we credit the lack of prejudice suffered by Abington and ASL to Biddle's substantial compliance with the case management order herein, including all the applicable local rules of Philadelphia County. We discern no reason why either Abington or ASL would be prejudiced by an extension of the discovery deadline, given both parties' failure to provide full and complete responses to Biddle's discovery requests prior to April 5, 2010.

After considering all the relevant factors in light of the circumstances of this case, we therefore conclude that denying Biddle's motion for extraordinary relief was an abuse of discretion on the part of the trial court. *Rohm & Haas, supra* at 142; *Croydon Plastics, supra* at 629.

 Consequently, based upon our disposition of Biddle's first issue, we conclude that the trial court erred in granting Abington and ASL's motion for summary judgment. In Pennsylvania, **"parties must be given reasonable time to complete discovery** before a trial court entertains any motion for summary judgment[.]"** *Reeves v. Middletown Athletic Ass'n,* 866 A.2d 1115, 1124 (Pa.Super.2004) (emphasis added). Specifically, Pennsylva-

nia Rule of Civil Procedure 1035.2 provides the following in pertinent part.

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> > (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense **which could be established by additional discovery** or expert report, or
> >
> > (2) if, **after the completion of discovery relevant to the motion,** including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2 (emphasis added). We, nevertheless, recognize that "the party seeking discovery is under an obligation to seek discovery in a timely fashion." *Reeves v. Middletown Athletic Ass'n,* 866 A.2d 1115, 1124 (Pa.Super.2004); *see Fort Cherry School Dist. v. Gedman,* 894 A.2d 135, 140 (Pa.Super.2006) (reasoning "[t]he Pennsylvania Rules of Civil Procedure do not give [parties] an unlimited amount of time to conduct discovery"). However, this Court has unequivocally stated that the purpose of Rule 1035.2 "is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed." [15] *Burger v. Owens Illi-*

---

**15.** Both *Burger, supra* at 618, and *Gerrow, supra* at 781–782, quote the 1996 explanatory comment accompanying Rule 1035.2, which provides the following in pertinent part.

Special note should be taken of the requirement under Rule 1035.2(2) that the motion be made after completion of discovery relevant to the motion, including the produc-

*nois, Inc.,* 966 A.2d 611, 618 (Pa.Super.2009), *quoting Gerrow, supra* at 781–782. Moreover, "[t]he adverse party must be given adequate time to develop the case and the motion [for summary judgment] will be premature if filed before the adverse party has completed discovery relevant to the motion." *Id.*

In the case *sub judice,* due to the trial court's abuse of discretion, the parties never had the opportunity to properly complete discovery. As we concluded above, the trial court should have granted Biddle's motion for extraordinary relief and, thus, extended the discovery deadline. In addition to the reasoning contained within our discussion of Biddle's first issue, we note that Biddle was not given a reasonable amount of time to complete discovery. *Reeves, supra* at 1124. Abington and ASL filed their answer to Biddle's joinder complaint on March 1, 2010, following the denial of their preliminary objections. After reviewing the answer and new matter filed in response to Biddle's joinder complaint, Biddle properly served its written discovery requests upon Abington and ASL. Therefore, under the case management order, Biddle had approximately one month after the pleadings were closed to complete all discovery relevant to Abington and ASL's motion for summary judgment before the April 5, 2010 deadline expired.[16] One month is an inadequate amount of time to complete discovery and to develop the record; hence, Abington and ASL moved for summary judgment prematurely. *See Fort Cherry School Dist., supra* at 140; *Reeves, supra* at 1124; *see also* Pa. R.C.P. 1035.2, 1996 explanatory comment.

Accordingly, for all of the reasons discussed in our above analysis, we hold that the trial court erred by entertaining Abington and ASL's motion for summary judgment prior to the completion of discovery.

Order reversed. Judgment vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

tion of expert reports. While Rule 1035.2(2) is prefaced with the statement that any party may file a motion after the relevant pleadings have closed, the adverse party must be given adequate time to develop the case and the motion will be premature if filed before the adverse party has completed discovery relevant to the motion. The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed.

The timing of the motion is important. Under Rule 1035.2(1), the motion is brought when there is "no genuine issue of any material fact ... which could be established by additional discovery or expert report." Under Rule 1035.2(2), the motion is brought "after the completion of discovery relevant to the motion."
Pa.R.C.P. 1035.2, 1996 explanatory comment.

**16.** We recognize that nothing prevented Biddle from initiating written discovery prior to its receipt of Abington and ASL's answer and new matter. Nevertheless, we acknowledge that, by deciding to conduct discovery only after receiving Abington and ASL's answer and new matter, Biddle pursued a reasonable and practical discovery strategy. Importantly, we discern nothing in the record that indicates Biddle either acted in a dilatory manner or prejudiced Abington and ASL through its conduct.