John POTOCHNICK and Carol Potochnick, husband and wife, Appellees/Cross–Appellants,

v.

Stacy R. PERRY, Individually, and Kenis Perry and Lonnie Perry, Individually and t/a K & L Motors.

Appeal of Stacy R. Perry, Individually Appellant/Cross–Appellee.

Superior Court of Pennsylvania.

Argued July 29, 2004.

Filed Oct. 13, 2004.

Reargument Denied Dec. 9, 2004.

Edward J. McKarski, Bethlehem, for Perry.

John T. McLane, Scranton, for Potochnick.

Before: LALLY–GREEN, GANTMAN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Stacy R. Perry appeals from the January 30, 2004 judgment entered following a jury verdict in favor of appellees John and Carol Potochnick in the amount of $10,786,397.25. After careful review, we affirm the judgment.[1]

¶ 2 The trial court accurately set forth the lengthy factual history of this matter as follows.

On June 15, 1988, the Defendant was traveling on Tanite Road heading toward its intersection with a larger four-lane highway. She went through the stop sign and crashed into the side of the car operated by the Plaintiff, John Potochnick. Although she protested that the brakes failed in her vehicle, the brakes were pumped by the police officer and he found them firm, and they were pumped by her brother, who was a garage man, and he found them firm. The Defendant never offered any testimony or evidence from anyone with respect to an independent or other examination of that vehicle showing that the brakes had failed. The vehicle had a successful inspection about ten months before the accident and was driven only about 3800 miles after that successful inspection.

The Plaintiff experienced some degree of unconsciousness either at the scene or in the ambulance being taken to the hospital. Dr. Vegari testified for the

---

1. The three appeals filed in this matter were consolidated by this Court on March 3, 2004, pursuant to Pa.R.A.P. 513, **Consolidation of Multiple Appeals**. Of the three, the appeal by Stacy R. Perry at 442 EDA 2004 is the only appeal remaining for our consideration. The first appeal filed by Perry at 337 EDA 2004 is quashed, as the December 29, 2003 Order from which the appeal was taken was vacated by the trial court rendering the appeal therefrom moot. Appellees, John and Carol Potochnick's cross-appeal at 540 EDA 2004 is dismissed at their request since they have abandoned their claim of trial court error in excluding a period of time in the calculation of delay damages. *See* appellees' brief at 40.

Plaintiff that in addition to the concussion, the Plaintiff had a grand mal seizure at the collision and that the seizure caused further brain damage. In his hospital discharge summary on June 21, 1988, after the Plaintiff had been hospitalized for six days, Dr. Vegari listed severe cerebral concussion, possible left parietal lesions, brain stem concussion, new on-set seizure disorder and a fracture of an acromium process on the right and multiple lacerations to the face and extremities. That record also shows the first abnormal EEG which occurred in the hospital.

At the time of the accident, Mr. Potochnick was working as a banker with a responsible position in a branch bank. He, in fact, either had just been or was about to be the president of the local bankers association. Although the Plaintiff was advised to see a psychiatrist, he declined to do so for approximately one-year after the accident. However, when he threatened to commit suicide, he was advised either to see Dr. Morrow, the psychiatrist, or be committed. Mr. Potochnick has had 154 sessions with Dr. Morrow, and Dr. Morrow diagnosed him with sever post-traumatic depression, organic brain syndrome and organic personality disorder. The Plaintiff's medications have been adjusted and modified over the years as some of them did not work sufficiently to control his seizures and others produced side effects which were uncomfortable. The experts testified that the Plaintiff is both paranoid and concrete. That is to say that when you tell the Plaintiff to change his routine, he cannot accept that instruction to change. Dr. Gensimerr of the Geisinger Clinic testified that the Plaintiff's brain injury was permanent and that he is not able to live independently and is totally disabled for employment.

The Plaintiff attempted to return to work about four (4) months after the accident, but the evidence was that he was unable to perform the duties which that work entailed. He then went to a more junior position for a period of time, but found that even in that junior position, he could not remember simple things such as his key code for entering his computer, and he became paranoid at work locking his door and thinking people were going through his files and failed to make meetings for significant presentations. When he was unable to do banking work and was relieved of his job at the bank, he actually took on the role of delivering newspapers for the route which his son had put together for some period of time until he found that he simply could not accomplish even that modest responsibility.

Trial Court Opinion, Biester, J., 7/15/04, at 4–6.

¶ 3 As the trial court properly notes, this case possesses a "very long and rather tortured history." *Id.* at 1. This matter first proceeded to trial in October 1996 and resulted in a unanimous verdict in favor of appellant. Thereafter, the court granted appellees' motion for judgment notwithstanding the verdict and ordered a new trial on the issue of damages. On September 12, 1998, this Court vacated the trial court's Order granting JNOV and ordered a new trial on the grounds the verdict was against the weight of the evidence. On appeal, our Supreme Court initially granted appellant's petition for allocatur, but later dismissed the appeal as having been improvidently granted. On remand, the case was retried in October 2002 before the Honorable Edward G. Biester, Jr., spe-

cially presiding.[2] Following an eight day trial, the jury returned a verdict in favor of appellee John Potochnick in the amount of $5,000,000, and appellee Carol Potochnick in the amount of $1,000,000 for loss of consortium.

¶ 4 On October 23, 2002, appellees filed a petition for delay damages, which appellant opposed in part, on November 12, 2002. Appellant subsequently filed timely post-trial motions on October 25, 2002 and October 28, 2002. Appellant's post-trial motions were denied and subsequently, final judgment was entered on January 30, 2004.[3] This timely appeal followed.

¶ 5 On appeal, appellant avers she is entitled to a new trial and raises three distinct issues for our review.

1. Is Stacy Perry entitled to a new trial based upon the rulings of the Trial Judge in excluding the testimony of proposed defense witness, Frank Hays?

2. Is Stacy Perry entitled to a new trial based upon the Trial Judge's refusal to read Proposed Point for Charge Number 19 on behalf of Stacy Perry, which would have informed the jury that the brake failure could have been a justifiable excuse for failing to stop at an intersection controlled by a stop sign?

3. Is Stacy Perry entitled to a new trial based upon the Trial Judge's refusal to read Proposed Charge Number 18 on behalf of Stacy Perry, which would have instructed the jury regarding her duties pursuant to the Sudden Emergency Doctrine?

4. Is Stacey Perry entitled to a remittitur, or in the alternative, a new trial on damages on the basis that the verdict

shocks the conscience of the Court and not supported by the record?

5. Did the Lower Court err in calculating plaintiffs' delay damages by failing to exclude from the period of delay the time frame from June 1, 2002 to July 1, 2002 when a petition for recusal filed by John Potochnick was pending before the Lower Court?

Appellant's brief at 4.

■ ¶ 6 This Court has long-recognized "the power to grant or deny a new trial lies inherently with the trial court, and we will not reverse its decision absent a clear abuse of discretion or error of law which controlled the outcome of the case." *Young v. Washington Hospital,* 761 A.2d 559, 561 (Pa.Super.2000) (citation omitted). Assessment of whether a trial court has abused its discretion in denying a motion for a new trial is governed by the standard set forth in *Stalsitz v. Allentown Hospital,* 814 A.2d 766 (Pa.Super.2002).

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply

---

**2.** The Honorable Ronald E. Vican presided over the October 1996 trial. This matter was retried before Judge Biester as a result of the court's May 28, 2002 Order granting appellees' motion for recusal.

**3.** *See* footnote 1.

the law, or was motivated by partiality, prejudice, bias, or ill will.

*Id.* at 771 (citations omitted). Where a jury's verdict is so contrary to the evidence that it shocks one's sense of justice, a new trial is warranted. *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998).

■ ¶ 7 Appellant first argues the prejudice she suffered as a result of the exclusion of the testimony of proposed defense witness Frank Hays entitles her to a new trial. Appellant's brief at 10. Specifically, appellant avers Hays would have testified he heard the crash between the two vehicles, observed appellant crying and visibly shaken upon arriving at the scene, and overheard her tell an unidentified person that she did not see the stop sign and her brakes failed. *Id.* Appellant contends Hays' testimony should have been admitted under the excited utterance exception to the hearsay rule. *See* Pa.R.E. 803, **Hearsay exceptions; availability of declarant immaterial,** (2).

■ ¶ 8 The standard of review in assessing an evidentiary ruling of a trial court is extremely narrow. "[T]he admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion." *Eichman v. McKeon,* 824 A.2d 305, 319 (Pa.Super.2003) (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Ettinger v. Triangle–Pacific Corp.,* 799 A.2d 95, 110 (Pa.Super.2002) (citation omitted).

¶ 9 After careful review, we conclude the proffered testimony of Frank Hays was clearly cumulative and, if admitted, may in fact have been detrimental to appellant's case. We reiterate the well-reasoned Opinion of the trial court.

In the event we erred in precluding Mr. Hays' testimony, we find it difficult to see any particular harmful consequence of that error. The Defendant testified that her brakes failed and her chief witness testified that her brakes failed. The police officer testified that the Defendant told him that she applied the brakes and the vehicle wasn't slowing down, and he read out what the Defendant said to him at the scene in the following terms: "When she approached the stop sign she applied her brakes but her vehicle did not slow down. She told her friend to hold on because she was not going to be able to stop the vehicle before the intersection."

Additionally addressing the issue of how harmful our error may have been, if it was error, we refer back to the proffer and in the proffer it was to the effect that Mr. Hays would testify that he overheard some unidentified person ask her what happened and she had correspondency [sic] that while coming down Tanite Road "she hadn't seen the stop sign and that her brake failed, or something to that extent." There is insufficient clarity with respect to that proffer on the one hand and on the other hand, she seems to be conceding in response that she hadn't seen the stop sign itself and that would have been of some difficulty for her with respect to her protestation that the accident happened solely because her brakes failed.

Trial Court Opinion at 10–11. Accordingly, appellant's claim of trial court error must fail.

■ ¶ 10 We turn to appellant's claims the court erred in failing to separately instruct the jury on the concepts of negligence per se and the doctrine of sudden emergency in accordance with her Proposed Points for Charge Nos. 18 and 19. Appellant claims she suffered prejudice as

a result of the court's failure to fully instruct the jury with Charge No. 18 on how they should evaluate her conduct under the sudden emergency doctrine. She avers Charge No. 19 would have informed the jury that her alleged brake failure could have been a justifiable excuse for her failure to stop at the stop sign.

18. In determining whether a defendant responded reasonably to a sudden emergency, you must decide whether the defendant engaged in an honest exercise of judgment, even if not the best judgment under the circumstances, when faced with a sudden emergency not of his or her own making. When a person finds himself or herself in danger which is not the result of his or her own negligence, that person is not responsible if he or she makes a mistaken judgment in getting out of danger, even if a different response could have been implemented if the person had time to deliberate. *Lewis v. Mellor,* 259 Pa.Super. 509, 526, 393 A.2d 941 (1978); *Troutman v. Tabb,* 285 Pa.Super. 353, 360, 427 A.2d 673 (1981); *Rosato v. Nationwide Ins. Co.,* 263 Pa.Super. 340, 344 n. 1, 397 A.2d 1238 (1979). A sudden emergency may include brake failure. *Gilligan v. Shaw,* 441 Pa. 305, 272 A.2d 462 (1971).

19. The failure to halt at a stop sign only becomes negligence per se when the failure to halt is unexcused. You may find that there was a valid excuse for the Defendant, Stacey Perry's failure to halt for the stop sign if you find that she was unable to comply with the sign, despite reasonable diligence and care. *Bumbarger v. Kaminsky,* 311 Pa.Super. 177, 457 A.2d 552 (1983).

Defendant's Proposed Points for Charge, 10/16/02, at 16, 17; Record No. 56.

¶ 11 "[I]n reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this court to determine whether the record supports the trial court's decision." *Lockhart v. List,* 542 Pa. 141, 147, 665 A.2d 1176, 1179 (1995). "In so reviewing, we are mindful that a trial court is bound to charge only on that law for which there is some factual support in the record." *Levey v. DeNardo,* 555 Pa. 514, 517, 725 A.2d 733, 735 (1999) (citation omitted).

In examining [jury] instructions, our scope of review is to determine whether the trial court committed [a] clear abuse of discretion or [an] error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Boutte v. Seitchik,* 719 A.2d 319, 324–325 (Pa.Super.1998) (citations omitted).

¶ 12 Here, the court addressed appellant's proposed points for charge and concluded proposed instruction 17 best stated the legal principles to be applied in the event the jury made certain findings with respect to the failure of appellant's brakes. N.T., 10/15/02, at 217–218; Trial Court Opinion at 11–12. The court charged the jury as follows:

Now, if you find that the defendant violated either or both of those sections of the Motor Vehicle Code, then you would have to find under the negligence per se, negligence in and of itself concept, that the defendant was negligent.

Now, in this case, the defendant has urged that the brakes of her vehicle failed, and she was, therefore, confronted with what the law calls a sudden emergency.

Now, with respect to a sudden emergency, the burden of proof shifts in the sense that on everything so far the plaintiff has had the burden of proof. On sudden emergency, the defendant has the burden of proof. That's the difference which is very important.

The defendant is required to show under this concept that suddenly and without warning she was confronted with a dangerous situation she did not create and which required immediate evasive action.

A defendant faced with a sudden emergency is still required to respond reasonably. The reasonableness of her response must be determined in light of the circumstances and the time the defendant had to react and not whether she could have responded differently if she had more time to think.

If you find that there was no emergency or that the emergency was created by the defendant, then the defendant has under those circumstances not met her burden of proof.

If you find the defendant has proven that she was confronted with a sudden emergency not of her own making, you must then determine whether the defendant's response to that emergency was reasonable under the circumstances.

If you find the defendant's response was reasonable under the circumstances, then your verdict with respect to the issue of negligence per se out of the stop sign would have to be for the defendant.

In other words, that negligence per se on the stop sign, remember, summarizing here, the plaintiff has the burden to prove that the defendant violated the stop sign provisions in the Motor Vehicle Code. The defendant has the burden of proof that a sudden emergency occurred. If she succeeds in establishing that to your satisfaction, then the negligence per se arising out of the stop sign disappears.

If she does not succeed in establishing that sudden emergency to your satisfaction, then you're right back where you were on the stop sign with the plaintiff having the burden of proof. If the plaintiff carries that burden of proof, then that's negligence per se if she went through it. Fair enough? Okay.

N.T., 10/16/02, at 129–131. The court further reasoned that the instruction adequately clarified the doctrine of sudden emergency.

We believe that we covered appropriately the issue of sudden emergency in affirming the Defendant's Point No. 17 in the precise language of the suggested jury instructions and that that comprehensive expression with respect to the Rules regarding sudden emergency was sufficient to apprise the jury fully of the circumstances tending to that Rule. Since we had covered the matter as we chose to cover it and the reading of that point to the jury would have been cumulative under all the circumstances, we found no merit in the Defendant's allegation that a cause of error occurred in our not reading Point No. 18.

Trial Court Opinion at 21–22.

¶ 13 Upon further review, we find the court's combined charge on the concepts of negligence per se and the doctrine of sud-

den emergency was not "unnecessarily complex," as appellant contends. Appellant's brief at 15. This Court has long-recognized the "refusal to give a requested instruction containing a correct statement of law is ground for a new trial *unless the substance thereof has otherwise been covered in the court's general charge.*" *Ottavio v. Fibreboard Corp.,* 421 Pa.Super. 284, 617 A.2d 1296, 1302 (1992) (emphasis added; citation omitted). In this case, it is clear the court complied with this standard, and a reading of proposed charges 18 and 19 was not necessary. The court's charge "accurately reflects the law and [was] sufficient to guide the jury in its deliberations." *Cruz v. Northeastern Hospital,* 801 A.2d 602, 611 (Pa.Super.2002) (citation omitted). Accordingly, appellant's claim of trial court error fails.

¶ 14 Appellant next argues she is "entitled to a remittitur, or in the alternative, a new trial on damages on the basis that the verdict shocks the conscience of the Court and [is] not supported by the record." Appellant's brief at 4. The trial court concluded "remittitur should be applied in narrow circumstances," and subsequently denied appellant's request. Trial Court Opinion at 14.

¶ 15 Our standard of review in assessing whether the trial court erred in denying appellant's request for remittitur is well-settled.

> Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption.

*Haines v. Raven Arms,* 536 Pa. 452, 455, 640 A.2d 367, 369 (1994) (citation omitted).

The decision to grant or deny remittitur is within the sole discretion of the trial court, and proper appellate review dictates this Court reverse such an Order only if the trial court abused its discretion or committed an error of law in evaluating a party's request for remittitur. *Doe v. Raezer,* 444 Pa.Super. 334, 664 A.2d 102 (1995); *see also Brinich v. Jencka,* 757 A.2d 388 (Pa.Super.2000).

¶ 16 An abuse of discretion requires:

> Not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record.

*Bowser v. Blom,* 569 Pa. 609, 615–616, 807 A.2d 830, 834 (2002) (citation omitted). Upon careful review, we agree with the trial court that appellant is not entitled to remittitur or, in the alternative, a new trial on the issue of damages.

> Any review of the special medical damages in this case and the evidence with respect to the profound life changing experiences which the Plaintiff had undergone and the future expenses which his profound deficit will require indicate that no remittitur is appropriate and the conscience of this court was not shocked by the amount of the verdict.

Trial Court Opinion at 14.

¶ 17 Dr. William Jeffreys, a neurologist, testified that appellee is permanently unemployable and suffers from a number of serious impairments as a result of the accident including: the risk of future seizures; impairment of the cognitive function; depression; difficulty seeing in his left visual field; slowness of movement; a masked facies; a resting tremor; cogwheel rigidity; mild dystaxia; mild weakness in his right upper extremity; and an

unstable gait. N.T., 9/30/02, at 49–57. The weight assigned to expert testimony lies within the sole province of the jury, and it is free to believe all, part or none of the evidence. *Gaydos v. Gaydos,* 693 A.2d 1368 (Pa.Super.1997); *see also Gunn v. Grossman,* 748 A.2d 1235 (Pa.Super.2000). In this case, the jury considered the testimony of both appellant's and appellees' experts and obviously chose to believe the latter. This was within their prerogative, and on appeal, this Court is not free to substitute its judgment for that of the fact finder. The $5 million dollar verdict for a man in appellee, John Potochnick's medical condition, and the $1 million dollar verdict for his wife, does not shock our conscience. Accordingly, appellant's claim the verdict was excessive and exorbitant is without merit.

■ ¶ 18 Finally, appellant contends the trial court erred in calculating appellees' delay damages by permitting them to recover from June 1, 2002 to July 1, 2002.[4] Appellant's brief at 23. Appellant asserts this 30 day time frame should have been excluded on the grounds "President Judge Ronald E. Vican granted the recusal by Order on July 1, 2002." *Id.* at 24. Appellant's claim is without merit.

¶ 19 Delay damages are governed under Pa.R.C.P. 238, **Damages for Delay in Actions for Bodily Injury, Death or Property Damage**, which in pertinent part provides:

> (a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or

in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

Pa. R.C.P. 238(a)(1). Rule 238(b)(1)(ii) excludes from the award of delay damages the time period during which a plaintiff causes delay of the trial.

¶ 20 Our standard of review in assessing whether a trial court erred in calculating delay damages is well-settled. We will not reverse a trial court's decision to impose delay damages absent an abuse of discretion. *Shay v. Flight C Helicopter Services, Inc.,* 822 A.2d 1 (Pa.Super.2003). In this case, it is undisputed appellees filed a motion for recusal on April 29, 2002. Record No. 30. Review of the record further indicates the court granted recusal on May 28, 2002, and not on July 1, 2002, as appellant contends. Record No. 36. The court's July 1, 2002 Order merely requests our Supreme Court to assign a new judge "due to the fact all the judges of the 43rd Judicial District have a conflict of interest." Record No. 43. Accordingly, the calculation of appellees' delay damages permitting recovery from June 1, 2002 to July 1, 2002 was proper.

¶ 21 For the above-stated reasons, the judgment against appellant, Stacy Perry, in the amount of $10,786,397.25 is affirmed.

¶ 22 Judgment affirmed at No. 442 EDA 2004.

¶ 23 The appeal at 337 EDA 2004 is quashed.

¶ 24 The appeal at 540 EDA 2004 is dismissed.

¶ 25 Jurisdiction relinquished.

---

4. The trial court found appellant's response to appellees' petition for delay damages was general in nature and was specific only with respect to the June 2001 to June 2002 time period. Trial Court Opinion, Biester, J., 7/15/04, at 23.