J-S24003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| DAVID DAVIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JANICO DELI GROCERY, LLC, D/B/A | : | No. 127 MDA 2023 |
| JANICO GROCERY | : | |

Appeal from the Judgment Entered January 3, 2023
In the Court of Common Pleas of Berks County Civil Division at No(s):
18-2882

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: SEPTEMBER 27, 2023**

Appellant, David Davis, appeals from the January 3, 2023 judgment entered against Appellee, Janico Deli Grocery, LLC, d/b/a Janico Grocery ("Janico"), in the amount of $2,359.55, following a jury trial.  We affirm.

The trial court explained the background of this case as follows:

On June 9, 2017, [Appellant] had a retail display fall on him when he was a business invitee at the store owned by [Janico].  At the jury trial, [Appellant] presented evidence that his neck, head, spine[,] and shoulder rotator cuff were injured as a result of the incident.  [Janico] presented evidence that only the injuries complained of by [Appellant] and treated at the hospital emergency room three days later were caused by the incident. The jury limited [Appellant's] damages to the medical costs related to the hospital emergency room treatment in the amount of $2,359.55[,] and did not award any non-economic damages.

[Appellant] filed a [m]otion for [p]ost-[t]rial [r]elief for a new trial on the issues concerning damages because[, *inter alia*,] the jury

---

[*] Former Justice specially assigned to the Superior Court.

did not award any damages for pain and suffering. After consideration of the evidence presented at trial and the memoranda filed by counsel, this court denied [Appellant's] motion. [Appellant] filed a timely appeal [from the subsequent judgment that was entered].[1]

Trial Court Opinion ("TCO"), 3/6/23, at 1-2.

On appeal, Appellant raises the following issues for our review:

[1]. Whether the trial court erred in denying [Appellant's] motion for post-trial relief in the form of a new trial on the issue of damages because the jury's verdict made no award of pain and suffering damages[,] despite the fact that [Janico's] expert witness acknowledged that [Appellant] suffered at least a head contusion, hematoma, post-concussion syndrome and neck strain[,] and it thus was undisputed that [Appellant] had sustained at least some painful injuries.

[2.] Whether the trial court erred in denying [Appellant's] motion for post-trial relief in the form of a new trial on the issue of damages because the jury's award of $2[,]359.55 for past medical bills was based on defense counsel's improper closing argument regarding [Appellant's] emergency room bill, which was not part of [Appellant's] claim for past medical bills and thus not supported by the record evidence.

[3.] Whether the trial court erred in denying [Appellant's] motion for post-trial relief in the form of a new trial on the issue of damages because [Appellant's] claim for loss of earning capacity was improperly excluded from the jury's consideration based on defense counsel's argument that [Appellant] had failed to produce his tax returns in discovery.

[4.] Whether the trial court erred in denying [Appellant's] motion for post-trial relief in the form of a new trial on the issue of damages because the fact that [Appellant] had not sustained a past earnings loss did not preclude him from a loss of earning capacity claim.

_____

[1] Appellant also timely complied with the trial court's order to file a concise statement pursuant to Pa.R.A.P. 1925(b), and the trial court thereafter issued a Rule 1925(a) opinion.

[5.] Whether the trial court erred in denying [Appellant's] motion for post-trial relief in the form of a new trial on the issue of damages, and also erred in denying [Appellant's] earlier motion for mistrial, because the court's two-day delay in ruling on the loss of earning capacity claim, and the court's subsequent ruling to exclude that claim and corresponding instructions[,] harmed [Appellant's] credibility in the eyes of the jury, causing [Appellant] to be severely prejudiced.

Appellant's Brief at 3-4 (unnecessary capitalization omitted).

## I.

In Appellant's first issue, he argues that the trial court erred in denying him a new trial on the issue of damages "because the jury's verdict made no award of pain and suffering damages despite the fact that [Janico's] expert witness acknowledged that [Appellant] suffered at least a head contusion, hematoma, post-concussion syndrome and neck strain[,] and it thus was undisputed that [Appellant] had sustained at least some painful injuries." *Id.* at 20 (emphasis omitted). We disagree that the trial court erred on this basis.

Our Supreme Court has previously recognized that,

[i]t is well settled that in reviewing an order to grant a new trial our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law. A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice.

*Neison v. Hines*, 653 A.2d 634, 636 (Pa. 1995) (cleaned up).

Here, the trial court explained why it denied Appellant a new trial due to the jury's failure to award pain and suffering damages, as follows:

In the case *sub judice*, [Appellant] did not seek immediate medical treatment for his injuries; instead, he received treatment at a hospital's emergency room three days after the incident. [Janico] admitted that the retail display fell onto [Appellant], causing the head injury, which was treated at the hospital, but [Janico]

vigorously denied [Appellant's] claims that his spine and shoulder rotator cuff were also injured as a result of the incident. The jury evidently found [Appellant's] arguments valid because it assessed negligence and causation but limited [Appellant's] recovery to the amount of the bill for the emergency room services.

The jury may have disbelieved [Appellant's] version of the injuries that he received. [Appellant] demonstrated agility that was free from any lingering effects of pain when he demonstrated how the rack fell on him. Moreover, he embellished the size of the object that hit him by bringing into court a piece of wood that was thicker and longer than the actual piece of wood that struck him. [Appellant] only admitted these discrepancies on cross-examination. [Appellant] is a contractor, and the jury may have believed that he would have been able to supply a more correct replica of the plywood that struck him due to his occupation. [Appellant] also testified that he still goes to [Janico] to buy T-shirts, the same item he was buying when the accident occurred. The jury may have wondered why he would return to the place of his injury for the same thing if he had suffered from serious and painful injuries in purchasing that item.

[Appellant] initiated two other lawsuits, and other injuries were brought out in the trial. The jury was free to believe that the injuries [Appellant] complained about were related to those lawsuits.

TCO at 3-4.

In addition to the credibility concerns pointed out by the trial court, Janico's expert — Dr. David Reinhardt, an orthopedic surgeon — provided the following video testimony, which was played for the jury at trial:

[Janico's counsel:] What were the conclusions that you reached based upon your physical examination -- medical examination of [Appellant]? Your review of the records that you testified to so far today. And then, I requested that you actually look at the films rather than just the MRI reports…. What are your conclusions or what were your conclusions after you did all of that?

[Dr. Reinhardt:] So, in summary of everything I've reviewed and saw, [Appellant] had a head injury where plywood fell on his head

-- had hematoma and a head injury.[2]  The records document that.

The records document he had a neck strain potentially, based upon the [emergency room] records.  But I don't feel that [Appellant's] neck herniations and the surgery he had to his neck are related to any traumatic event based upon the fact that the MRI findings are chronic and preexisting.

And he also had rotator cuff surgery, which again, the first MRI did not show any rotator cuff tear.  Second one did.  I do not feel he had any injury to his right shoulder in relation to the incident of June 9, 2017.  ***So the only thing I opine to that I feel is reasonable, he may have a neck sprain, very mild, which we resolved.  And he had a head contusion hematoma, which did resolve.***

\*\*\*

[Appellant's counsel:] Now, during your direct testimony, you said that as a result of the June 9 [incident], [Appellant] did suffer a head hematoma.

Correct?

[Dr. Reinhardt:] Yes.

[Appellant's counsel:] As well as a neck sprain.

Correct?

_____

[2] When asked to explain what a 'hematoma' is, Dr. Reinhardt stated:

So a hematoma is a bruise.  If you ever had something hit your arm and your leg, you get swelling, bruising --- it's black and blue --- so that's called a bruise or hematoma.  And there's blood underneath the skin when that occurs.  And hematomas can be of different sizes.  They could be small like a blood blister, or they could be larger.

N.T. Trial, 12/5/22-12/7/22, at 1620 (Janico's Exhibit 12 - Testimony of Dr. Reinhardt).

[Dr. Reinhardt:] Yeah, the hematoma was seeing [*sic*] an [emergency room] doctor, and then the doctor also at the time diagnos[ed] him with a neck sprain, yes.

[Appellant's counsel:] How about a concussion? Did he also have a concussion?

[Dr. Reinhardt:] He may have assumed he had a concussion --- he said that. That had to be confirmed neurologically by a neurologist or doctor of that such.

[Appellant's counsel:] So we agree that the emergency room diagnosed him with [a] concussion?

[Dr. Reinhardt:] He was concerned he may have a concussion. Again, if I was there, I may have not said he had a concussion.

[Appellant's counsel:] Okay.

And all these records that you reviewed that you testified to direct [*sic*] --- these are things that you rely upon to create your opinions.

Correct?

[Dr. Reinhardt:] That's correct.

[Appellant's counsel:] All right.

Now, you had also mentioned during the history that [Appellant] said he fell on his knees, and do you question that? If that's true or not?

[Dr. Reinhardt:] That's what he told me, but all the records of his treating doctors, there's no mention that he actually fell to the ground. Even Dr. Stempler's records --- his treating doctor --- says when he got hit on the head he staggered, but there's no documentation on four evaluations that he fell to the ground.

[Appellant's counsel:] Is that significant to you?

[Dr. Reinhardt:] It is.

[Appellant's counsel:] Why?

[Dr. Reinhardt:] Because then it would happen [*sic*] that it was a significant blow that would cause him to fall.

N.T. Trial at 1558-60, 1586-88 (emphasis added).

In awarding Appellant only the amount of the emergency room bills, the jury seemed to accept Dr. Reinhardt's testimony that Appellant only suffered a mild neck sprain and a head hematoma as a result of the incident.[3] This Court has previously recognized that a jury may award zero dollars for pain and suffering where the injuries are not significant enough to call for compensation:

> In **Majczyk v. Oesch**, 789 A.2d 717 (Pa. Super. 2001), an *en banc* panel of this Court upheld a jury award of zero dollars for pain and suffering. The [C]ourt acknowledged that not all injuries are serious enough to merit compensation. The [C]ourt held that under the facts of that case it was not reversible error to award zero damages for pain and suffering. The plaintiff in **Majczyk** claimed she suffered a herniated disc in a minor accident, causing ongoing pain and suffering, and requiring surgery. Though both sides' experts conceded that plaintiff suffered some injury in the accident, the jury found in favor of the defendant, whose expert opined the herniated disc was not caused by the accident, and that plaintiff's accident-related injuries were actually less severe, a mere "cervical strain."
>
> The **Majczyk** Court specifically held that the jury may find for the defendant despite his obvious negligence when it does not believe the plaintiff's pain and suffering, or that her injury is the sort that is compensable. The Court quoted from **Boggavarapu v. Ponist**, … 542 A.2d 516, 518 ([Pa.] 1988), for the proposition that some injuries are the sort of "transient rub of life for which

---

[3] To the extent Appellant claims that he was also diagnosed with a concussion at the emergency room, we point out that Dr. Reinhardt's above-stated testimony suggests that the concussion diagnosis was rendered based on Appellant's self-reporting. **See also** N.T. Trial at 320 (Janico's counsel arguing in closing that "when [Appellant] went to the emergency room, the records of the emergency room say this: Likely post-concussion. Likely. Nauseous. There are … subjected [*sic*] complaints from [Appellant]. That a CT scan was unremarkable and that he had neck strain. That's all we have from St. Joseph's Hospital"). As the trial court observed, the jury may have questioned Appellant's credibility and, therefore, the extent and seriousness of his concussion. **See** TCO at 3-4.

compensation is not warranted." The court further held that "the determination of what is a compensable injury is uniquely within the purview of the jury." *Majczyk*, *supra* at 726. The court confirmed that credibility determinations lie within the province of the fact finder, and a jury is always free to believe all, part, some or none of the evidence presented. *Majczyk*, *supra* at 725–26. The court concluded that, based on this record, the jury properly found that plaintiff's accident-related injuries were minor, causing only a few days or weeks of discomfort, and not the sort that require compensation. *See also*[] *Davis v. Mullen*, … 773 A.2d 764 ([Pa.] 2001) (jury may decide that no pain and suffering damages are due, even where medical expenses are awarded).

*Marsh v. Hanley*, 856 A.2d 138, 139-40 (Pa. Super. 2004).[4]

Here, it would have been reasonable for the jury to conclude that Appellant's injuries were minor and not compensable in terms of pain and suffering. Again, Dr. Reinhardt testified that Appellant suffered only a mild neck strain and head hematoma due to the display's falling on him, and Dr. Reinhardt said both injuries resolved. The jury also heard that Appellant did not seek medical help right away and continued to patronize the store after the incident. In addition, while Appellant repeatedly emphasizes in his brief that Janico conceded that the display's falling on him caused his head injury and mild neck sprain that were treated at the emergency room, Appellant does not develop an argument that this head injury and mild neck sprain amounted

---

[4] The *Marsh* Court went on to distinguish *Majczyk* from the facts before it and reversed the trial court's order denying a new trial on damages where the jury had awarded the plaintiff zero damages for pain and suffering. *See Marsh*, 856 A.2d at 140 ("[T]he instant case involved more than a minor rear end collision. [The plaintiff's] car was struck twice on the driver's side. An ambulance transported [the plaintiff] to the hospital; she suffered injuries which required her to take medications; her symptoms did not ameliorate for almost six months; and she lost considerable time from work. Unlike the plaintiff in *Majczyk*, [the plaintiff] here suffered compensable injury….").

to more than minor injuries, causing more than a few days or weeks of discomfort, as was the case in **Majczyk**. In other words, he fails to support — with citation to the record — his conclusory claim that the mild neck sprain and head hematoma were significant, painful injuries warranting compensation for pain and suffering. We decline to scour the record and craft this argument for him. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citation omitted). As such, we are unconvinced that Appellant's first issue warrants relief.

## II.

In Appellant's second issue, he says that the trial court denied his request for a new trial on damages "because the jury's award of $2[,]359.55 for past medical bills was based on defense counsel's improper closing argument regarding [Appellant's] emergency room bill, which was not part of [Appellant's] claim for past medical bills and thus not supported by the record." Appellant's Brief at 28 (emphasis omitted). No relief is due, as we determine that Appellant has waived this issue by failing to object at trial.

In Janico's closing argument, Janico's counsel stated the following, in relevant part:

> If you find negligence, if you find notice, how are you ever supposed to figure out what part of the $53,000 is related to St. Joseph's hospital[, *i.e.*, where Appellant was treated in the

- 9 -

emergency room]?[5]  I've got the answer for you.  It's [Janico's] Exhibit No. 2.  When we were dealing with a legal issue outside the presence of the jury, which happens in every case, we're dealing with the introduction of evidence, what's objectionable, what's permissible, what isn't.  And exhibit, which was [Appellant's] Response to [Janico's] Request for Production of Documents, Defense Exhibit 2, was introduced into evidence and it says here:

Falldown Summary of Special Damages.  St. Joseph's Hospital. Period: June 13th, 2017.  $2,359.55.  That's the amount of the medical lien that [Appellant] would be obligated to pay back to the medical insurance company if you find that we are responsible, that my client is responsible for the damages that occurred as a result to the head, the concussion and the contusion.  And that amount in this exhibit is $2,359.55.

N.T. at 326-27.

On appeal, Appellant complains that

the emergency room bills that [Janico's] counsel urged the jury, in his closing, to award exclusively, were never offered in[to] evidence to support the medical expense claim nor ever mentioned by any witness.  Indeed, the emergency room bills were not included in [Appellant's] claim because no subrogation lien had been asserted for them.  The parties stipulated that the medical expense claim was the amount of the UPMC/Equian lien statement, and all of the treatment on that statement was for [Appellant's] cervical and rotator cuff injuries.  Defense counsel's argument asked the jury to reach a verdict based on facts contrary to the evidence, and as a result, the jury rendered a verdict that is not supported by the record evidence and must be vacated.

_____

[5] Appellant says that his

claimed medical bills were paid by UPMC Health Plan, which asserted a lien for $53,703.66, administered by Equian.  This was the only evidence admitted relating to [Appellant's] claim for past medical expenses, and it did not include any bills for [Appellant's] initial treatment at the St. Joseph Hospital Emergency Room, as no lien was asserted for those bills by the insurer.

Appellant's Brief at 7 (emphasis in original; citation omitted).

Appellant's Brief at 30.

Appellant has waived this claim. Pennsylvania Rule of Civil Procedure 227.1(b) provides:

> (b) Except as otherwise provided by Pa.R.E. 103(a)[, relating to rulings on evidence], post-trial relief may not be granted unless the grounds therefor,
>
> (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; **and**
>
> (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.Civ.P. 227.1(b) (emphasis added).

While Appellant raised this issue in his post-trial motion, he does not indicate — and our review of the record does not show — that Appellant made a timely objection at trial to Jancio's reference to the $2,359.55 emergency room bill in its closing argument. Appellant's lack of objection at trial violates Rule 227.1(b). Accordingly, this claim is waived.

## III.

In Appellant's third issue, he avers that the trial court improperly excluded his claim for loss of earning capacity from the jury's consideration based on defense counsel's argument that he had failed to produce his tax returns in discovery. Again, we disagree.

Based on our review of the record, Appellant argued and introduced evidence on the first day of trial about work that he can no longer do because

of his injuries from the incident.  ***See, e.g.***, N.T. Trial at 28-30, 98-100, 130-34.  In response, defense counsel complained that he did not know until trial started that Appellant was seeking economic damages.  ***Id.*** at 39-43, 98, 130.  Defense counsel explained that he had sought discovery relating to economic damages but received nothing in return from Appellant.  ***Id.*** at 41-42.  On the beginning of the second day of trial, the trial court discussed with counsel the discovery that had taken place in the case, setting forth the following chronology:

> THE COURT: Okay.  [Janico's counsel], I believe you showed me an interrogatory where you had asked for information, lost earnings or wage loss.
>
> [Appellant's counsel]: Your Honor, I think I gave them to you yesterday.  We answered them.  They were the exhibits.
>
> THE COURT: Okay.  I want to make sure I have all the papers.
>
> Okay.  I have them.  Okay.  I just want to get some chronology of this.  So I guess the first thing that happened is the interrogatories, which I'm not sure of the date.
>
> [Appellant's counsel]: If you look, Your Honor, it's sometime in 2018.  There's a signed verification on the back page which will give you the date.
>
> THE COURT: Okay.  And then [Janico] asked: Are you claiming impairment of earning capacity as a result of [the] incident?  And the answer is: Yes.  And then --
>
> [Appellant's counsel]: Then it follows up the next question.  Because the next question says: If you answer the above in the affirmative, which we did, it then says like tell us why.  And there's a whole detail.  We give all those answers as well, including his --
>
> THE COURT: The point is that it is a claim for impairment of earning capacity.

- 12 -

[Appellant's counsel]: Yes.

\*\*\*

THE COURT: The next notice we have, [Janico's counsel], is the -- seems like there was something else before the deposition.

[Janico's counsel]: Court's indulgence.

So, Your Honor, there was [Janico's] First Request for Production of Documents addressed to [Appellant,] … served on April 6th, 2018, and among those … was a request for No. 8: All documents, records and other writings, including Federal and State Tax returns filed by [Appellant], which may constitute evidence of income for [Appellant] received during 2014 through 2017, if [Appellant] is claiming lost wages.

[Appellant's counsel]: Your Honor, and, again --

THE COURT: Did you get an answer to that? …

[Appellant's counsel]: We did. Well, it said --

THE COURT: Just let me wrap that up. Those --

[Appellant's counsel]: They're actually, I believe, in front of you as well.

THE COURT: Did you get an answer to that?

[Janico's counsel]: Yes, Your Honor.

THE COURT: What was the answer?

[Janico's counsel]: Counsel?

[Appellant's counsel]: It said that we are gathering the material. I can read it exactly. Can we pull it out so I'm not saying -- hold on.

THE COURT: Okay. And then did you get that material to him?

[Appellant's counsel]: We did not. Quite frankly, we forgot about it. But, again, that's why --

THE COURT: Okay.

[Appellant's counsel]: First of all, remember --

- 13 -

THE COURT: But let me finish first and then you can state what you need to state.  Then --

[Appellant's counsel]: Here's what our answer was.  I can read it.

THE COURT: Go ahead.

[Appellant's counsel]: [Appellant] is gathering tax documents and will supply same when they are available.  [Appellant] reserves the right to amend and/or supplement this answer at the time of trial.

We looked for --

THE COURT: And that's never been supplemented?

[Appellant's counsel]: Yeah, but we --

THE COURT: Before you go off in other directions, let me just keep it --

[Appellant's counsel]: We never gave those documents.

THE COURT: Okay.  So then we have the deposition, which is 2020, July 16th, 2020, where the question is: How are you employed?

Self employed.  Right Choice Properties.

So do you own and manage rental properties?

Answer: Yes.

And then [Jancio's counsel] says: [Appellant's counsel], is there a lost wages claim here?

And [Appellant's counsel] says: We don't know.  We were discussing that.  We haven't calculated it.  I will tell you this, if we do, we will give you an expert report and I will give you an opportunity to question him again.

So -- and the bottom line is that these materials that you had requested were never provided, and, also, there was never an expert report provided.  Is that correct, [Janico's counsel]?

[Janico's counsel]: That's correct, Your Honor.

THE COURT: Okay.  Now, go ahead, [Appellant's counsel].

[Appellant's counsel]: First of all, he asked is there a lost -- we're not presenting a lost wage claim. This is not a lost wage claim.

THE COURT: But there's a lot of evidence about what he has lost.

[Appellant's counsel]: Earning capacity.

THE COURT: Right.

[Appellant's counsel]: So if you look at the interrogatories.

THE COURT: Right.

[Appellant's counsel]: [I]t says, you know: Are you presenting a loss of economic claim, loss of diminished earning -- we said yes. Then the request for production of document says: If you're submitting a lost wage claim, give us -- he didn't say give us the information relating to the loss of -- they never asked us for lost and diminished earnings.

Think about this. First of all, some of those documents are corporate documents. Yes, he controls the company. But his personal tax returns wouldn't have even reflected the loss of earning capacity. There's a difference.

And, you know, words are used … based upon their definition. I was asked very specific questions and I answered those questions. And even if he thought that we should have given him documents that we didn't give him, because we answered -- it's not like we didn't answer discovery, we answered it -- he had two years to get -- there's no letter, he said please send it to us. There was no motion to follow up. Nothing.

THE COURT: Right.

[Appellant's counsel]: And you can't kind of sit on your laurels and say they didn't give it to us and now come into trial and say preclude it. That's why we have discovery motions and sanctions.

\*\*\*

THE COURT: Are you finished, [Appellant's] counsel?

[Appellant's counsel]: If you can just -- one more thing -- take a look at the interrogatory -- the request for production of document. They're different than the interrogatories. It said, No. 8, which is what we answered to and said we're trying to gather them. It says: All documents, records and other writings,

- 15 -

including tax returns filed by [Appellant], which may constitute evidence of loss of income for [Appellant] received during 2014 until '17, if [Appellant] is claiming lost wages. That's important. Right? Because, what he says is, One, we only want [them] if you claim lost wages, which we're not. Two, evidence of income that was received prior to the event, prior to the cause of the injury. And, again, that's where I used the analogy the other day, someone who's in medical school and gets injured and can't work, he can have a big loss of earnings claim --

THE COURT: I know there's a difference between lost earnings -- lost wages and loss of earning capacity.

[Appellant's counsel]: Right. So the documents they requested were -- they were conditionally requested based upon us presenting a lost wage claim.

THE COURT: I don't buy that at all. That's like saying it's a technicality and … because, I mean, it's described in different ways in so many places that he asked in the question for the interrogatories, [a]re you claiming impairment of earning capacity?

[Appellant's counsel]: We said yes. … And remember in the definition [*sic*], which was two years after that, for whatever reason [Janico's counsel] chose not to question that. He could have very easily said, [a]re you presenting a claim for loss of diminished earning capacity? We would have said yes.

THE COURT: The deposition, you promised him.

[Appellant's counsel]: For lost wages.

THE COURT: … I can't let you get away with that. That's just terrible. I mean --

[Appellant's counsel]: It's not, Your Honor.

THE COURT: … I'm not happy with that kind of technicality. We're talking about the same thing … whether he's working, it's earning capacity or it's lost wages, whatever the case may be. And then the bottom line is that at the deposition, which is July 16th, 2020, it says: I will tell you this, if we do, we will get you an expert report and I will give you an opportunity to question him again.

[Appellant's counsel]: Right, if it's a lost wage claim.

THE COURT: And you have not provided any discovery. You have not provided any expert report. You have not provided anything to [Janico's counsel]. And he is at a complete loss, a complete disadvantage. And now that it's all been brought to my attention, the bottom line is, all this evidence, all this questioning that you are doing and want to continue to do[,] is about things that he doesn't know anything about because it was never provided.

[Appellant's counsel]: Because he didn't ask. I mean, … I've known [Janico's counsel] for a long time, and we've always gotten along. I wasn't doing anything to hide or trick him, okay? And if he would have said to me is there a loss of earning … capacity? Yes. We answered yes before. But there are no documents that we have that would support that. Because, again, the documents requested relate to wages. And there's a distinction and difference. You've got to use the words that are appropriate. And I answered appropriately.

THE COURT: [Janico's counsel]?

[Janico's counsel]: Judge, I think it's a matter of semantics. As the [c]ourt has indicated, I walked into this courtroom with absolutely no concept that there was anything related to economic damage that would ever be presented to this jury.

When [Appellant's counsel] got up and gave his opening statement to the jury, I have to be quite frank and tell you that I was deeply concerned because I … knew nothing about it. I had asked about it. I have no documents. And he's presented this evidence. I just, you know, I asked the simple question [d]o you have a single piece of paper to substantiate any of these claims, which really gets to my point. I have nothing to be able to defend.

[Appellant's counsel]: You know what, Your Honor, he has the right --

THE COURT: That's my point.

[Appellant's counsel]: -- to argue in front of a jury that the claims are frivolous, they are based because --

THE COURT: That's if you provide him the discovery.

[Appellant's counsel]: No, no, no.

THE COURT: Not if you are surprising him or ambushing him. And that's what we have.

[Appellant's counsel]: Your Honor, he can argue that that's an issue.

THE COURT: We have an ambush or surprise.

***

THE COURT: The point is that the purpose of discovery is to provide all the information that is necessary in order to prepare and, I mean, we talk about experts. If you're going to have presentation of an expert, the defense can have the expert as well. But the purpose is so that there can be cross-examination. And now we have all this testimony about all these other wages so I am --

[Appellant's counsel]: There's no wages.

THE COURT: … I am constrained, certainly constrained, I am duty bound to notify the jury that they should disregard any evidence of lost wages.

[Appellant's counsel]: Your Honor, in that case, I ask for a mistrial, because I've spoken at length and that undermines our whole case.

THE COURT: Let me finish. Any evidence of lost wages, earning capacity, or impairment of earning capacity. And there won't be any testimony on that for the reasons I've stated.

[Appellant's counsel]: Your Honor, then that's fine. You've now undermined my credibility with the jury and I would ask that we just have a mistrial. And then we can go forward, and, again, … I understand what you're saying. You think it's an ambush. That was not my intent. My intent was to listen to what he said and respond according to the words that were being used. And, as you said, there is a difference and a distinction between wages and earning capacity. He asked me about wages in the deposition. There are none. Yet you're precluding us from earning capacity when we said in the written discovery that there is and we explained why there is. So now you're not allowing it.

THE COURT: Did you ever provide any information about … any lost earning capacity? You never provided any.

[Appellant's counsel]: He didn't ask him.

THE COURT: What?

[Appellant's counsel]: Show me where he asked [for] information about loss of earning capacity. There is nowhere. The request for production of documents don't [*sic*] ask for it. They ask for lost wages. They don't ask for loss of earning capacity.

Remember, he had those written -- he had the interrogatories before the deposition. For whatever reason he chose not to say, tell me about your answer to the request to our interrogatories. Says, you know, do you suffer loss of earning capacity? He didn't ask any questions. It's not my fault. You're not [*sic*] penalizing me. We said yes[,] there is a claim for earning capacity. He never followed it up. Two years later[,] his deposition[,] all he asked was wages. He didn't ask in the interrogatories are there lost wages, because we would have said no.

THE COURT: [Janico's counsel]?

[Janico's counsel]: I stand on my argument, Your Honor.

THE COURT: All right.

And I'll deny your request for a mistrial. … I don't know about the credibility, but the point is, there's oftentimes rulings that prevent any further testimony regarding that. And I can inform them that that is not an issue before the jury at this time.

So how would you like me to tell them?

[Appellant's counsel]: I wouldn't like you to tell them at all because I don't think it's appropriate.

THE COURT: [Janico's counsel]?

[Janico's counsel]: Your Honor, I would do it just the way you said, that there was testimony yesterday regarding these issues to be disregarded.

THE COURT: Okay.

N.T. at 137-49.

Appellant claims that Janico had long been on notice of his lost earning capacity claim, citing his August 2018 responses to Janico's interrogatories. Appellant's Brief at 34. Moreover, he insists that — even if he had failed to

disclose the claim in discovery — the preclusion of such evidence was an unwarranted, drastic sanction. *Id.* He also maintains that Janico should have filed a motion to compel, seeking the outstanding tax documents requested by Janico in 2018 in its First Request for Production of Documents, but failed to do so. *Id.* at 36.

This Court has stated that "[t]he decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court. We will not reverse a trial court's order imposing such a sanction unless the trial court abused its discretion." *Jahanshahi v. Centura Development Co., Inc.*, 816 A.2d 1179, 1184 (Pa. Super. 2003) (citation and internal quotation marks omitted).

In *Jahanshahi*, the appellants' damages claim included the cost of equipment, but they failed to provide the appellee with the evidentiary basis for this claim even though it had been requested in discovery. *Id.* at 1183. As a result, the trial court excluded this evidence, and the appellants challenged that ruling on appeal. *Id.* Upon review, this Court acknowledged that the appellee had requested such discovery and opined that the appellee needed to know the basis of the equipment costs to defend against the appellants' claim. *Id.* at 1184. As the trial court found that the appellee's defense was substantially prejudiced by the appellants' failure to provide such

discovery, we discerned no abuse of discretion in the trial court's decision to exclude such evidence. *Id.*[6]

We similarly discern no abuse of discretion here. The trial court reasonably found that Janico's counsel was misled when it asked at Appellant's deposition in 2020 if there was a claim for lost wages, and Appellant's counsel represented that they did not know but, if they decided to pursue such a claim, they would supply an expert report and permit Janico to question Appellant again. Appellant never supplied any further documentation, nor did his counsel clarify that — while Appellant may not be pursuing a claim for lost wages — he was pursuing a lost earning capacity claim. As such, after

_____

[6] Appellant cites to *Anthony Biddle Contractors, Inc. v. Preet Allied American Street, LP*, 28 A.3d 916 (Pa. Super. 2011), stating that it contains five factors courts are to consider when imposing a discovery sanction. *Id.* at 926 ("Mindful, of course, that each factor represents a necessary consideration and not a necessary prerequisite, this Court has outlined the following factors: (1) the nature and severity of the discovery violation; (2) the defaulting party's willfulness or bad faith; (3) prejudice to the opposing party; (4) the ability to cure the prejudice; and (5) the importance of the precluded evidence in light of the failure to comply.") (citation omitted). However, our reading of that case suggests that those factors are to be considered when the sanction ultimately results in the termination of the action. *Id.* at 926-27 ("Because the denial of Biddle's motion for extraordinary relief was the functional equivalent of a sanction that ultimately resulted in the termination of the underlying action, the trial court was required to consider the five factors…, and to balance those factors against the necessity of the sanction.") (citation omitted); *see also id.* at 926 ("[W]here a discovery sanction either terminates the action directly or would result in its termination by operation of law, the court must consider multiple factors balanced against the necessity of the sanction.") (citation and internal quotation marks omitted). Here, the trial court's exclusion of the evidence relating to lost earning capacity did not terminate Appellant's action and, thus, we deem the analysis in *Jahanshahi* more on point.

receiving no documentation relating to an economic claim during discovery, the trial court determined that Janico was "ambushed" at trial when Appellant sought to present such evidence. TCO at 7. The record supports the trial court's findings and, pursuant to ***Jahanshahi***, the exclusion of such evidence was an appropriate sanction given the substantial prejudice that would have resulted to Janico if such evidence were introduced.

As for Appellant's assertion that Janico should have filed a motion to compel Appellant to produce the tax returns that were requested in 2018, we reject this suggestion. Appellant indicated at the deposition in 2020 that he would provide documentation if he was pursuing a claim for lost wages. Appellant did not take further action on this front and, therefore, Janico reasonably assumed that there were no economic claims at issue. As such, Janico did not need to file a motion to compel.

**IV.**

In Appellant's fourth issue, he advances that the trial court erred in denying him a new trial on the issue of damages because "the fact that [Appellant] had not sustained a past earnings loss did not preclude him from a loss of earning capacity claim." Appellant's Brief at 37 (emphasis omitted). Appellant goes on to explain that "[t]he test for impaired earning capacity is whether the economic horizon of the disabled person has been shortened because of the injuries sustained as a result of the tortfeasor's negligence[,]" and he insists that "[a]n injured plaintiff may recover for loss of future earning capacity whether the loss in capacity actually reduces his earnings or not."

*Id.* at 37, 37-38 (citations omitted).  Here, he maintains that his "inability to perform the strenuous physical work that he could do before his injury, and the need to hire others to perform those duties, clearly shortened his economic horizons, and his claim for loss of earning capacity should not have been excluded." *Id.* at 38-39.

We are confused by this issue.  As detailed *supra*, the trial court excluded Appellant's loss of earning capacity claim due to his failure to provide documentation relating to it during discovery, not because he had not sustained a past earnings loss.  As such, no relief is due on this basis.

## V.

In Appellant's fifth and final issue, he claims that the trial court erred in denying his motion for a mistrial and post-trial motion because "the [c]ourt's two-day delay in ruling on the loss of earning capacity claim, and the [c]ourt's subsequent ruling to exclude that claim and corresponding instructions harmed [Appellant's] credibility in the eyes of the jury, causing [Appellant] to be severely prejudiced."  Appellant's Brief at 39 (emphasis omitted).  His entire argument on this issue consists of the following:

> The [t]rial [c]ourt ruled to exclude the loss of earning capacity claim after delaying a decision on same and allowing the jury to hear evidence relating to that claim during the first two days of trial.  [Appellant] was severely prejudiced by this ruling and thus made an oral motion for mistrial, which the [t]rial [c]ourt denied. The motion for mistrial should have been granted, rather than the jury being instructed to disregard the evidence of lost earning capacity that had already been presented to them over the first two days of trial.

A trial court should grant a mistrial whenever prejudicial conduct or remarks deprive a party of a fair and impartial trial. ***Gregury v. Greguras***, … 196 A.3d 619, 627 [(Pa. Super. 2018)].

For the same reason, [Appellant's] subsequent [m]otion for [p]ost-[t]rial [r]elief in the form of a [n]ew [t]rial on the issue of damages should have been granted. The jury's verdict reflected the prejudice to [Appellant] caused by the [c]ourt's two-day delay in ruling on the lost earning capacity claim, and its repeated, confusing instructions to the jury relating to that claim. A new trial is warranted when a [c]ourt's error results in prejudice to a party. ***Potochnick v. Perry***, 861 A.2d 277, 281 [(Pa. Super. 2004)].

Appellant's Brief at 39-40 (internal citations to reproduced record omitted).

***See also*** Appellant's Reply Brief at 7 (arguing that the trial court's confusing instructions following two days of testimony on the earning capacity claim "damaged [Appellant's] credibility in the eyes of the jury and undoubtedly influenced the verdict").

No relief is due. Initially, our review of the record shows that the trial court ruled to exclude the evidence on the beginning of the second day of trial. Thus, we consider Appellant's argument that the jury heard evidence relating to earning capacity during the first two-days of trial to be inaccurate. Moreover, Appellant's cursory argument fails to convince us that the trial court's instructions to the jury to disregard such evidence were inappropriate. ***See*** N.T. Trial at 157 (the trial court's instructing the jury: "You recall yesterday we went back and forth on what was labeled as economic damages. And I said, well, that has to be looked at and this has to be looked at. So everything has been looked at now and so my instructions to you is [*sic*] to disregard any evidence of lost wages, earning capacity, impairment of earning

capacity. That is not an issue in this case, in [Appellant's] case."); *id.* at 336 (the trial court's instructing the jury: "Members of the jury, reference was made to the loss of earnings, lost income, that it was exaggerated. … I made the ruling not because of it being exaggerated, I made a ruling for my reasons, which you don't need to know that, but it was not because it was exaggerated or not exaggerated. So you should disregard that. And how I feel about lost earnings or lost income has nothing at all to do with this. I made a ruling based on what has happened so far as the proceedings in this case [*sic*] and as far as the law is concerned. So -- and you'll still have an opportunity to, of course, address that and you'll do that now."); *id.* at 370 (the trial court's instructing the jury: "[J]ust to remind you again that the example of a … job description, applying for a job for 35 years, whatever, just so you're not thinking that economic damages compensation for lost wages or earning capacity is an issue in the case. It's not an issue in the case, so I'll just say it one more time--"). Appellant complains about the trial court's instructions but does not provide a reasoned analysis on why they were insufficient, confusing, or undermining of his credibility. We, once again, decline to develop this argument for him. *See Hardy*, *supra*.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/2023